

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Ace Ray Buyher, Jr.,<br>Eugene Anthony Peterson,<br><br>    Defendants. | No. 04-3163M  TUC DCB<br><br>**ORDER** |

Pending before this Court is the government's appeal of the Magistrate's order granting the pretrial release of Defendants Buyher and Peterson pending trial. For the reasons set forth below, the Magistrate's order is vacated and Defendants Buyher and Peterson are ordered detained.

## I. INTRODUCTION

On March 19, 2004, Defendants Buyher and Peterson arrived at a meeting west of Tucson that had been prearranged by co-Defendant Brandon Smith and an undercover agent with the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). (Tr. at 4:5-5:10)[1] The meeting had been arranged to coordinate a home invasion for the purpose of obtaining narcotics. (Tr. at 5:1-10; Complaint) Defendant Buyher came to the meeting equipped with a fully loaded pump shotgun, body armor (*i.e.,* bullet-proof vest), gloves, and a mask. (Tr. at 7:1-16)

---

[1]  "Tr." refers to the transcript of the March 24, 2004 detention hearing before Magistrate Judge Marshall.



Defendant Peterson came equipped with a sawed-off shotgun, gloves, and a mask. (Tr. at 8:2-11)

The undercover ATF agent asked Defendants Buyher and Peterson if they were willing and ready to perform the planned home invasion. (Tr. at 8:16-17) Both Defendants answered in the affirmative. (*Id.*)

ATF agents arrested Defendants Buhyer and Peterson, as well as co-Defendant Smith, before the planned home invasion could occur. (Tr. at 8:18-21) Defendants Buhyer and Peterson are each charged by criminal complaint with Conspiracy to Possess with Intent to Distribute 500 Pounds of Marijuana and 20 Kilograms of Cocaine, 21 U.S.C. §§ 841 & 846, and Possession of a Firearm During and in Relation to a Drug Trafficking Crime, 18 U.S.C. § 924(c)(1)(A).

At the March 24, 2004 detention hearing, ATF Agent Timothy Hoover conceded on cross-examination that if Defendant Peterson was confined to his home that Agent Hoover would have no reason to believe Defendant Peterson would pose a danger to the community. (Tr. at 11:11-21) Agent Hoover made no such concessions regarding Defendant Buyher. (Tr. at 12:1-13:3)

Pretrial Services recommended that Defendants Buyher and Peterson both be released with property bonds posted for each. (Tr. 18:2-7; 21:4-8) Pursuant to the recommendation of Pretrial Services, the Magistrate ordered the release of Defendants Buyher and Peterson on property bonds of $50,000.00 each. (Tr. 23:1-3, 15-19)

II.     DISCUSSION

    A.     **Standard of Review**

When reviewing a magistrate's order regarding pretrial detention or release, the district court makes its own de novo determination of the facts, without deference to the findings of the magistrate. *United States v. Koenig*, 912 F.2d 1190, 1191-93 (9th Cir. 1990); *see also United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

### B.     Bail Reform Act

Under the Bail Reform Act, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense" under 18 U.S.C. § 924(c). 18 U.S.C. § 3142(e). "[A] judicial officer does not have to make an independent determination of probable cause; a grand jury indictment itself is sufficient to establish probable cause for purposes of invoking the Section 3142(e) presumption." *United States v. Ward*, 63 F.Supp.2d 1203, 1209 (C.D.Cal. 1999).

In this case, there is no indictment, only a complaint and the testimony of Agent Hoover. However, when the complaint and the sworn testimony of Agent Hoover are considered together, this Court finds probable cause to believe that Defendants Buhyer and Peterson committed the offenses charged.[2]

Nevertheless, despite the existence of probable cause, at the March 29, 2004 hearing before this Court regarding the government's appeal, the Defendants argued that the mere possession of firearms does not constitute a crime of violence warranting detention pending trial. Defendants are correct. *See United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003) (per curiam). Defendant Peterson, however, did not merely possess a firearm; he possessed a sawed-off shotgun. In the Ninth Circuit, possession of a sawed-off shotgun is, as a matter of law, a crime of violence. *See United States v. Amparo*, 68 F.3d 1222, 1225 (9th Cir. 1995). The Ninth Circuit reasons that weapons such as sawed-off shotguns lack usefulness, "except for violent and criminal purposes." *United States v. Dunn*, 946 F.2d 615, 621 (9th Cir. 1991). By the same token, the only conceivable reason an individual would possess body armor, other than in a military or law-enforcement context, would be to engage in violent criminal activity. *See* U.S.S.G. § 3B1.5; *see also* 18 U.S.C. § 921(a)(35). Therefore, the fact that

---

[2]     Regardless, Defendants Buyher and Peterson both concede to the existence of probable cause. (*See* Defendant Peterson's "Memorandum in Support of Magistrate's Order Releasing Defendants on Bond" and Defendant Buyher's "Notice of Joinder" thereto)

3

Defendants Peterson and Buyher came equipped with a sawed-off shotgun and body armor, respectively, establishes, as a matter of law, that Defendants Peterson and Buyher were engaged in a crime of violence, giving rise to a presumption of detention. 18 U.S.C. § 3142(e).

The presumption "only shifts the burden of production on a defendant, not the burden of persuasion." *Id.* To prove that a defendant is a danger to the community, the government must produce clear and convincing evidence. 18 U.S.C. § 3142(f). The "danger" posed by a defendant is not limited to physical violence, but includes any likely conduct that will hurt the community, *i.e.*, continued criminal activity. See *United States v. Tortora*, 922 F.2d 880, 884-85 (1st Cir. 1990). Factors to be considered in the "danger" analysis include: a defendant's associational ties, his criminal history, his penchant for violence, the nature and circumstances of the offense charged (including whether it is a crime of violence or involves a narcotic drug), and the weight of the evidence against him. See *id.* at 885-86; *see also United States v. Flores*, 856 F.Supp. 1400, 1402 (E.D. Cal. 1994).[3]

In order to rebut the presumption, a defendant must produce evidence relating to any of the factors listed in 18 U.S.C. § 3142(g), to wit:

> (3) the history and characteristics of the person, including –
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings[.]

18 U.S.C. § 3142(g)(3)(A).

The introduction of such evidence by the defendant, however, does not eliminate the presumption entirely. "[I]nstead, the presumption retains evidentiary weight, and the precise weight to be given the presumption is a matter that the judicial officer is to consider within the framework

---

[3] Under Ninth Circuit precedent, the weight of the evidence is the least important factor. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

of factors set out in § 3142(g)." *Ward*, 63 F.Supp.2d at 1209 (citation and internal quotation marks omitted).

In this case, the Defendants point to their relatively minor criminal histories, as well as the recommendations of Pretrial Services as evidence rebutting the presumption of detention. Neither Defendant Buyher nor Defendant Peterson has a history of violence and their criminal records consist of only juvenile (and largely petty) offenses. Additionally, Agent Hoover testified that any danger to the community posed by Defendant Peterson could be neutralized by confining Defendant Peterson to his home. These factors do weigh against detaining Defendants Buyher and Peterson.

The government, on the other hand, points to the nature of the crimes with which the Defendants are charged, as well as circumstances leading to the Defendants' arrests. The nature of the crimes charged and the weight of the evidence against the Defendants are pertinent in predicting the Defendants' future conduct if released pretrial. *United States v. Flores*, 856 F.Supp. 1400, 1403 (E.D. Cal. 1994); *see also United States v. Townsend*, 897 F.2d 989, 996 (9th Cir. 1990). The nature of the offenses charged is one of extreme violence, involving significant quantities of narcotics, as well as weapons with no other purpose than to inflict as much damage as possible. It requires no stretch of the imagination to conclude that both Defendants were prepared to inflict serious physical injury or death had the planned home invasion come to fruition. If convicted, Defendants Peterson and Buyher both face mandatory minimum sentences of 10 years imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(ii)(II); 18 U.S.C. § 924(c)(1)(B)(i).

Moreover, the Defendants' relatively minor and largely non-violent criminal history is not dispositive of their dangerousness. As the Second Circuit explained, "Although a prior record of violence eases the government's burden of showing dangerousness, it is not essential." *United States v. Rodriguez*, 950 F.2d 85, 89 (2d Cir. 1991). Accordingly, "a record of violence or dangerousness ... is not necessary to support pretrial detention." *United States*

*v. LaFontaine*, 210 F.3d 125, 134 (2d Cir. 2000). In the present case, regardless of whether or not Defendants Buyher and Peterson have histories of violence, the nature of the offenses with which they are charged amply demonstrate the *present* danger they pose to the community.

There is ample support for this Court's determination that no condition or combination of conditions would reasonably assure the safety of the community from Defendants Buyher and Peterson. In *United States v. Walker*, 808 F.2d 1309 (9th Cir. 1986), the defendants were charged with conspiracy to distribute cocaine and possessing firearms. *Id.* at 1310. In ordering the defendants detained pretrial, the court found that the defendants' mere possession of firearms during and in relation to a drug trafficking crime established the defendants' dangerousness. *Id.* at 1311.

In *United States v. Bess*, 678 F.Supp. 929 (D.D.C. 1988), the defendant was charged with armed bank robbery and brandishing an Uzi. *Id.* at 935. In light of the seriousness the offense charged[4], as well as the weight of evidence against the defendant, the court ordered the defendant detained pretrial, despite the defendant's family and community ties, educational and employment history, and lack of prior adult convictions. *Id.* As the court explained:

> The probative value of Defendant's evidence on the issue of Defendant's potential danger to the community is limited, as shown by the fact that this evidence would equally tend to suggest that Defendant would never have committed the crime with which he is now charged. The history and characteristics of Defendant – his family and community ties, his education and employment record, and his lack of prior convictions as an adult – did not deter him from committing armed robbery in the first instance; its probative value for negating the government's case on Defendant's dangerousness is overwhelmed by the strength of the government's showing in all other areas.

*Id.*

---

[4] As the court explained, "The nature and seriousness of the danger posed by a person willing to use a machine gun to rob a bank is of the highest order." *Id.* The same can be said of individuals willing to use sawed-off shotguns and body armor to perform a home invasion.

6

  Here, the Defendants' lack of prior adult convictions in no way prevented or dissuaded them from arming themselves and conspiring to commit a home invasion to acquire large quantities of narcotics. Additionally, unlike in *Bess*, neither Defendant Buyher nor Peterson completed high school and neither has a history of steady employment. Thus, the probative value of the Defendants' lack of criminal convictions is minimal, at best.

  In *United States v. Davis*, 771 F.Supp. 331 (D. Kan. 1991), the defendant was charged with conspiracy to distribute heroin and use of a firearm during and in relation to a drug trafficking crime. *Id.* at 331-32. At the detention hearing, the court found that the defendant was not likely to flee, had no criminal history, was a life-long local resident with many family ties to the community, and was employed by his parents. *Id.* at 332. Nonetheless, the court ordered the defendant detained pretrial, providing the following explanation:

> The credible testimony and the information submitted at the hearing establishes by clear and convincing evidence that: The defendant is a danger to the community based on the substance involved. Heroin is a narcotic drug which the court believes to be more dangerous than cocaine. The court finds that the danger to the community would be quite serious if the defendant were released on bond. There is a serious danger of continuing drug sales while out on bond.

*Id.* at 333.

  In the present case, there is an equally serious danger that Defendants Buyher and Peterson will continue to engage in narcotics transactions if released on bond. The potential for such a danger is only enhanced by both Defendants' histories of substance abuse.

  In *United States v. Dodge*, 842 F.Supp. 643 (D. Conn. 1994), the defendant was charged with possession of a pipe bomb and silencer and conspiracy to possess a silencer. *Id.* at 644. The court in *Dodge* found that the defendant was a life-long resident of the state, was employed within the district, and had substantial family and community ties. *Id.* at 645. Additionally, the defendant had no felony convictions. *Id.* at 646. Nonetheless, the court ordered the defendant detained pretrial after finding that the defendant posed an unreasonable

7

risk to the community. *Id.* In reaching its conclusion, the court noted the circumstances of the charged offense, as well as the defendant's active membership in the Ku Klux Klan. *Id.* Of particular relevance to this case, the court further noted that, while the defendant did not yet have any felony convictions, he did have a criminal record reflecting the defendant's "ruffianism." *Id.*

In the present case, as in *Dodge*, while the Defendants' criminal records do not reflect any felony or adult convictions, they do reflect the Defendants' "ruffianism." When the Defendants' respective criminal histories are considered in conjunction with the extremely violent and dangerous nature of the offenses with which they are charged, this Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community. With respect to the recommendations of Pretrial Services, while the recommended terms and conditions may be adequate to assure the Defendants' appearance at trial, this Court specifically finds that they are inadequate to reasonably protect the community against the dangerousness posed by Defendants Buyher and Peterson. *See id.*

**Accordingly,**

**IT IS ORDERED** that the Magistrate's order of March 24, 2004, granting the pretrial release on bond of Defendant Buyher and Defendant Peterson is **VACATED.**

**IT IS FURTHER ORDERED** that Defendant Buyher and Defendant Peterson are ordered **DETAINED** pretrial pursuant to 18 U.S.C. § 3142(f)(2)(B).

DATED this 30th day of March, 2004.

David C. Bury
United States District Judge